UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 03-28 S |
| | : | |
| KEVIN MARTINS | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Kevin Martins ("Defendant") is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, hearings were conducted on May 30, and June 1, 2007. At the May 30, 2007 hearing, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms of his supervised release.[1] The Government made its sentencing recommendation, and Defendant requested a continuance until June 1, 2007. On June 1, Defendant confirmed that he wished to waive a violation hearing and admit to the violations. Based on that admission, I find that Defendant has violated supervised release. For the reasons stated herein, I recommend that Defendant be sentenced to a term of imprisonment

[1] Defendant admitted to the offenses committed on July 24, August 10, and December 14, 2006. As to the offenses allegedly committed on February 15, March 2, and May 12, 2007, Defendant admitted that the Government could present at a violation hearing sufficient facts to reasonably satisfy the Court that he had committed the offense of operating a motor vehicle on a suspended license on those dates. The Court permitted this form of acknowledgment because Defendant has not yet been adjudicated on the latter charges in the state district court, and he did not wish to prejudice his rights relative to those charges by making an unqualified admission to them in this Court.

for eight (8) months to be followed by a period of supervised release for twenty-eight (28) months with special conditions.

**Background**

On October 3, 2003, Defendant appeared before United States District Judge William E. Smith after pleading guilty to one count of possession of an unregistered sawed-off rifle in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871, a Class C felony. Judgment of 10/7/03 (Document ("Doc.") #42) at 1. Defendant was sentenced to twenty-seven months imprisonment with three years supervised released to follow. Id. at 2, 3. As special conditions of release, he was ordered to participate in a substance abuse treatment and testing program and pay a $100.00 special assessment. Id. at 4, 5. The $100.00 special assessment was paid in full on March 8, 2005. Supervised Release Violation Report (the "Report") at 1.

Supervised release commenced on April 12, 2005, with an expiration date of April 11, 2008. Report at 1. On or about May 23, 2007, Senior U.S. Probation Officer Brian Pletcher ("U.S.P.O. Pletcher") initiated a Petition for Warrant for Offender under Supervision (the "Petition"), alleging that Defendant had violated four standard conditions of his supervised release. See Petition at 1-2. In response to the Petition, Judge Smith ordered the issuance of a warrant, see id. at 2, and on May 30, 2007, Defendant appeared on the warrant before this Magistrate Judge to answer to the Petition, see Docket.

**The Violation**

The Report alleges that Defendant has violated the following conditions of supervision in the manner indicated:

**Standard Condition: While on probation, Defendant shall not commit another federal, state, or local crime.**

On July 24, August 10, and December 14, 2006, and February 15, 2007, Defendant committed the offense of driving with a

suspended license as evidenced by his arrest and subsequent pleas of nolo contendere in Third Division and Sixth Division District Courts.[2]

As to this violation, Defendant was arrested by the North Providence Police Department on July 24, 2006. He appeared before Judge Moore in Sixth Division District Court on August 24, 2006, under docket number 61-2006-15307 and was fined $350.00 plus $117.00 in court costs. On August 10, 2007, Defendant was arrested by the Cranston Police Department. He appeared before Judge Gorman in Sixth Division District Court on September 19, 2006, and was fined $500.00 plus $139.50 in court costs. Defendant also received a one year suspended sentence with one year probation. On December 14, 2006, Defendant was arrested by the West Warwick Police Department and appeared before Judge Clifton in Third Division District Court under docket number 31-2007-00073. Defendant was fined $300.00 plus $117.00 in court costs. On February 15, 2007, Defendant was arrested by the Rhode Island State Police. He failed to appear for arraignment on March 2, 2007. A bench warrant was issued, and Defendant was arrested and has been detained since May 14, 2007. A hearing was scheduled in state court for May 25, 2007.

**Standard Condition: While on supervision, Defendant shall not commit another federal, state, or local crime.**

On March 2, 2007, Defendant committed the offenses of driving with a suspended license, reckless driving, and obstructing a police officer as evidenced by his arrest by the East Providence Police Department.

As to this violation, on March 2, 2007, East Providence

[2] This statement is taken verbatim from the Violation Report ("Report"). See Report at 1. Technically, however, it appears that Defendant has yet to be adjudicated relative to the February 15, 2007, charge of operating on a suspended license.

Police Officers were patrolling on Bullocks Avenue when they observed Defendant's vehicle tailgating another vehicle. The vehicles were stopped, and the occupants of other vehicle related that for an unknown reason Defendant had been harassing them by flashing his lights and tailgating them. They related that at one point Defendant pulled beside them on a two lane road and swerved towards them. While the occupants of the second vehicle were being questioned, Defendant fled the scene and a warrant was issued. On May 12, 2007, Defendant was arrested on a separate matter, and he is currently being detained pending a violation hearing in Sixth Division District Court.

**Standard Condition: While on supervision, Defendant shall not commit another federal, state, or local crime.**

On May 12, 2007, Defendant committed the offenses of driving under the influence and driving with a suspended license as evidenced by his arrest by the Rhode Island State Police.

As to this violation, on May 12, 2007, state police officers were patrolling on Chestnut Street in Providence when they observed a vehicle with no rear license plate, tinted windows, and no inspection sticker. As the officers approached the vehicle, the operator identified himself as Kevin Martins. Further investigation revealed that his license was suspended and that there was an active warrant for him from the East Providence Police Department. The troopers also noted that Defendant had severely blood-shot eyes, that he mumbled, and that he had slurred speech. A sobriety test was conducted which Defendant failed. In the trooper's opinion, Defendant failed the "Walk and Turn Test" and the "One Leg Stand Test." A "Horizontal Gaze Nystagmus" test was also performed, and it was noted that there was a lack of smooth pursuit while following the target object and nystagmus prior to 45 degrees in both eyes. Defendant was detained pending a hearing on May 25, 2007.

**Standard Condition: While on supervision, Defendant shall not commit another federal, state, or local crime.**

In regard to the first violation, Defendant failed to report the arrests to the probation officer, and they were not detected until a scheduled annual record check on March 19, 2007. The March and May arrests were not reported to the probation officer and were not detected until receipt of an FBI flash arrest notice on May 18, 2007.

As to this violation, Defendant failed to report all of his arrests and convictions to the probation officer. The information came to light as a result of a required semi-annual criminal record check and an FBI flash notice. Following the criminal record check on March 19, 2007, Defendant was provided an opportunity to consult with an attorney, Olin Thompson, in an attempt to resolve the outstanding fines. Defendant failed to raise sufficient funds to retain Mr. Thompson, and he subsequently failed to appear for a cost review hearing.

**Travel**

On May 23, 2007, Judge Smith ordered the issuance of a warrant for Defendant to appear to answer to the Petition. See Petition at 2. The warrant was executed, and Defendant appeared before this Magistrate Judge on May 30, 2007. At that time Defendant was advised of the Petition and of the grounds for the alleged violation. Defendant, both personally and through counsel, waived a violation hearing and admitted to the violation. The Government then made its sentencing recommendation, and Defendant requested a continuance of the matter until June 1, 2007. At the June 1 hearing, Defendant re-affirmed his waiver of a violation hearing and his admission to violating supervised release. This admission satisfied the Court that there was an adequate basis for finding that Defendant had violated the conditions of supervision. After receiving

sentencing recommendations from both the Government and the defense and hearing from Defendant personally, the Court stated that it would issue a written report and recommendation. This is that Report and Recommendation.

**Law**

**Statutory Provisions**

Section 3583(e)(2) of Title 18 of the United States Code ("U.S.C.") provides that if the court finds a defendant to be a violator of the conditions of supervised release, the court may extend the term of supervised release if less than the maximum authorized term was previously imposed and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Fed. R. Crim. P. relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. In this case, the maximum term of supervised release was previously imposed. Therefore, the term cannot be extended.

Pursuant to § 3583(e)(3) of Title 18 of the U.S.C., the court may, after considering certain statutory factors set forth in § 3553(a), revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Fed. R. Crim. P. applicable to revocation of supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. However, a defendant whose term is revoked under this paragraph may not be required to serve more than two years in prison if the offense that resulted in the term of supervised release was a

class C felony. Here Defendant was on supervision for a Class C felony. Thus, he may not be required to serve more than two years imprisonment upon revocation.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release (here three years), less any term of imprisonment imposed upon revocation of supervised release. See id.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation. Section 7B1.1(b) provides that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade. In this case, Defendant has committed a Grade C

violation.

Pursuant to §7B1.3(a)(2) of the U.S.S.G., upon a finding of a Grade C violation, the court may revoke, extend, or modify supervision. Since Defendant has committed a Grade C violation, the Court may not extend supervision, but may revoke or modify the conditions of supervision.

Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(1) states that where the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e) for any portion of the minimum term. Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(2) states that where the minimum term of imprisonment determined under §7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. The first provision, which allows for alternatives for any portion of the minimum term, applies to this matter.

According to §7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under §7B1.4. In this case, there is

no outstanding restitution, fine, community confinement, home detention, or intermittent confinement.

Section 7B1.3(g)(2) of the U.S.S.G. provides that where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. See id. (citing 18 U.S.C. § 3583(h)). In this case, the authorized statutory maximum term of supervised release is three years. There has been no term of imprisonment previously imposed for violation(s) of supervised release. Therefore, the Court may impose the above-noted statutory maximum, minus the term of imprisonment that is to be imposed for this revocation.

Pursuant to §7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a criminal history category of III at the time of sentencing. The Revocation Table contained in §7B1.4(a) of the U.S.S.G. provides that, for a Grade C violation with a criminal history category of III, an imprisonment range of five to eleven months is warranted.[3]

Section 7B1.5(b) of the U.S.S.G. states that, upon revocation of supervised release, no credit shall be given toward

[3] The Court of Appeals for the First Circuit has held that Chapter 7 policy statements (including §7B1.4) are advisory rather than mandatory. See United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st Cir. 1993).

any term of imprisonment ordered for time previously served on post-release supervision.

**Disposition**

**Recommendations By Government**

The Government recommended a sentence of nine months imprisonment to be followed by two years of supervised release.[4] Regarding the latter requirement, the Government advised the Court that the Probation Department did not endorse imposition of a further period of supervised release. The Government explained that the Probation Department believed that the Department's limited resources would be best used assisting other defendants who were more likely to benefit from such attention than Defendant. Nevertheless, the Government stood by its recommendation, stating that it was desirable to have a hold on Defendant to deter future violations of the law.

**Defendant's Recommendation**

Defense counsel recommended that Defendant be placed on home confinement for an unspecified period of time to be followed by supervised release. In making this recommendation, counsel noted that it was likely that Defendant would receive some period of incarceration from the state district court for his most recent charges. She cited his family obligations as a factor weighing in favor of home confinement.

**Court's Recommendation**

The fact that within the span of less than ten months

---

[4] The Government had initially recommended a sentence of eleven months imprisonment to be followed by two years supervised release. See Tape of 5/30/07 Hearing. However, at the June 1, 2007, hearing, counsel for the Government explained that he was reducing the incarceration portion of his recommendation because of information which defense counsel had provided to him. See Tape of 6/1/07 Hearing. That information indicated that the March 2, 2007, incident was not racially motivated and that the May 12, 2007, charge of driving while intoxicated would be difficult to sustain. See id.

Defendant operated a motor vehicle on six separate occasions while his license to do so was suspended demonstrates a blatant disregard for the law. On September 19, 2006, Judge Gorman of the state district court fined Defendant $500.00 plus court costs of $139.50 and imposed a one year suspended sentence with one year probation. Notwithstanding this sentence, Defendant proceeded to commit the offense again on December 14, 2006, and February 15, March 2, and May 12, 2007. Even worse, Defendant exacerbated the March 2 violation by driving aggressively, frightening an eighteen year old woman and her boyfriend. The May 12 violation is also accompanied by the aggravating circumstance that Defendant operated a motor vehicle after consuming intoxicating beverages. The amount which he consumed was sufficient to raise the suspicions of the state troopers who stopped him that he was under the influence of such beverages. Even if Defendant was not legally intoxicated, his conduct demonstrated a reckless disregard for the safety of others.

In addition, it appears that Defendant had no compelling reason to drive on any of these occasions. The times at which he committed the last four offenses are all either late at night or in the early morning (1:40 a.m. on December 14, 2006; 10:00 p.m. on February 15, 2007; 9:58 p.m. on March 2, 2007; and 12:20 a.m. on May 12, 2007). Defendant has not offered any explanation for his conduct. While his counsel suggested that Defendant’s relative youth (he is twenty-three) may explain how Defendant could act as he did notwithstanding his responsibilities as a husband and father, this explanation, even if accepted, does not excuse Defendant’s behavior. Youth is not a license to violate the law, especially when the individual in question is already on supervised release for a felony.

It is true that the current violations are dissimilar to the offense which resulted in Defendant receiving a twenty-seven

month sentence. It is also true that enforcement of the state laws concerning the operation of motor vehicles is the primary responsibility of the state courts. Nevertheless, the number and repetitive nature of Defendant's violations weigh in favor of imposition of a sentence of incarceration. A sentence of home confinement, as advocated by defense counsel, would be insufficient to demonstrate the seriousness of Defendant's conduct. It would be insufficient to deter this Defendant from future violations. It would also send the wrong message to other defendants on supervised release as it would suggest that they could flagrantly disregard state laws governing the operation of motor vehicles and not be sent to prison for such violations.

Weighing in favor of a sentence of less than the guideline maximum of eleven months are the following factors. The Government has recommended a sentence of nine months imprisonment, a decrease from its original recommendation of eleven months. The Government lowered its recommendation after receiving information from defense counsel regarding the circumstances surrounding the last two incidents. That information indicates that the March 2, 2007, incident appears not to have been racially motivated, notwithstanding the fact that a racial epithet was shouted at the victim and/or her boyfriend.[5] The information also casts doubt on the likelihood that the May 12, 2007, charge of driving while intoxicated could be sustained.[6]

---

[5] Although the eighteen year old female victim of the March 2, 2007, incident reported in her witness statement that either Defendant or one of his passengers had shouted a racial epithet at her vehicle, the police report reflects that Defendant's two passengers were black.

[6] With regard to the May 12, 2007, incident, Defendant was not stopped for operating his motor vehicle erratically, but for equipment violations and lack of an inspection sticker. Only after engaging Defendant in conversation did the troopers suspect that he might be impaired. Arguably, the field sobriety test which was administered to

Also weighing in Defendant's favor is the fact that by waiving a violation hearing and admitting to the violations he has spared the Government the burden of having to prove the violations. Defendant has also saved the Court's time by making it unnecessary to conduct a violation hearing. This Magistrate Judge has by practice given defendants who waive a hearing and admit to the violation the benefit of a small reduction in the sentence to be recommended. The Court will continue to follow that practice here.

The Court concludes that Defendant's conduct warrants a sentence of eight (8) months imprisonment to be followed by twenty-eight (28) months of supervised release. The Court further recommends as special conditions of his supervised release that: 1) Defendant be required to participate in a mental health treatment program as directed and approved by the probation office; 2) Defendant participate in substance abuse treatment as directed by the probation office, which may include testing to determine whether or not Defendant has reverted to the use of drugs or alcohol; and 3) Defendant submit to a maximum of seventy-two drug tests per year as directed by the probation office. Given that the guideline range for a single Grade C violation is five to eleven months (for a defendant with a criminal history category of III), a sentence of eight months for the six violations to which Defendant has admitted is certainly within the appropriate range.

**Conclusion**

After considering the various factors set forth in 18 U.S.C.

---

him was confusing and difficult to pass even if not impaired. Although Defendant was administered a Breathalyzer test, it was not administered at the prescribed intervals, and the first result was .075. The fact that the subsequent readings were higher (.086 and .09) suggests that Defendant's blood alcohol level was rising. Therefore, it may have been lower at the time he was operating the vehicle.

§ 3553(a) and for the reasons expressed above, I recommend that Defendant be sentenced to eight (8) months imprisonment to be followed by twenty-eight (28) months of supervised release with the special conditions specified above. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
June 6, 2007